THOMSON, Appellant, v. FLOYD, Respondent.

(23 N. W. 924.)

(File No. 8812. Opinion filed August 15, 1946.)

**Bailey, Voorhees, Woods & Fuller,** of Sioux Falls, for Appellant.

**Boyce, Warren & Fairbank,** of Sioux Falls, for Respondent.

**Caldwell & Burns,** of Sioux Falls, for Intervener.

RUDOLPH, P.J.

Plaintiff seeks to be adjudged an equal owner in a certain radio program known as "G. I. Blind Date" or "Blind Date". The plaintiff was an employee of the Sioux Falls Broadcast Association with the title of program director. His duties included the mechanics of putting programs on the air and the supervision of the people who took part in the programs. Plaintiff was experienced in radio broadcasting and had conceived and produced other radio programs. The defendant, Floyd, is the owner of the Hollywood Theater in Sioux Falls. The Sioux Falls Broadcast Association had from time to time broadcast programs from this theater. The intervener, Gingrich, was another employee of the Sioux Falls Broadcast Association whose duties were principally promotional and sales. Intervener Gingrich has not appealed from the judgment entered against him. The defendant Gill was never served with process. Plaintiff alleges that at

the request of the defendant Floyd he collaborated "with the said Floyd in the origination and composition of a dramatic skit or production primarily for use at the Hollywood Theater in Sioux Falls, South Dakota, and as a radio broadcast over the local radio station at Sioux Falls, South Dakota, known as KELO * * *." In addition to asking for a determination by the court that he was an equal owner in this production the plaintiff sought an accounting of the proceeds derived from the sale thereof by the defendants. The case was tried to the court and the findings of the court were adverse to the facts as claimed by the plaintiff.

■■ It is the general rule as stated in 18 C.J.S., Copyright and Literary Property, § 11, p. 145 that: "Literary Property may be held in joint ownership, and each owner will be protected in his property. It is not necessary that the product shall be exclusively the work of one individual; it may be the work of one or of many. Whoever contributes in an intellectual way to the final result has an interest or property therein which will be protected. To constitute joint authorship there must be a common design to the execution of which the several persons contribute, and mere alterations, additions, or improvements, whether with or without the sanction of the author, will not entitle the person making them to claim to be a joint author of the work."

It is upon this rule of law that plaintiff relies; he contends that there was a common design by him and the defendant in the execution of this particular program and that he contributed in an intellectual way to the final result. It is the contention of the defendant and the view taken by the trial court of the evidence that there was no common design between the plaintiff and the defendant but that this production or work was conceived by the defendant who simply consulted plaintiff as to certain technicalities relating to the broadcasting. Defendant further contends that any contribution of the plaintiff to this production, if any, was simply by way of alterations, additions or improvements and not such a contribution as would entitle plaintiff to be deemed

a joint owner. The trial court determined the facts as follows:

"That about the first of December, 1942, the defendants Floyd and Gill met at a club in Sioux Falls and discussed the possibilities of creating a program to be used at the Hollywood Theater, particularly a program which would be in keeping with the then military atmosphere of the city and in which soldiers in uniform might appear on the stage and engage in telephone conversations, both ends of which conversations could be heard by the theater audience, and defendant Floyd attempted to call Thomson at the radio station to see if such a hook-up could be made. Defendants later that evening met in the offices at the Hollywood Theater and plaintiff came in and talked to them. At this meeting there was further discussion about a program and defendants asked plaintiff various questions about the mechanical part of putting on the program on the stage and over the radio where the use of telephones would necessarily be involved. Defendant Floyd advised Thomson that he and Gill had an idea for a program in which men in uniform would make dates by telephone with girls and that it would be a real blind date right in front of an audience and audible to radio listeners, and asked plaintiff if, in his knowledge of radio business, that kind of a two-way telephone conversation could be carried on the air. After discussion as to where the girls might be stationed, defendant Gill asked plaintiff if plaintiff had seen portable transmitters used in broadcasts from the stage of large auditoriums where the microphone was carried from one part of the building to another. Finally defendant Floyd suggested that the program be arranged with a partition down the center of the stage, the soldiers on one side and the girls on the other, so that all would be visible to the audience, and that telephones be arranged so that the soldiers and girls could telephone without seeing each other but that so their voices would be audible to the audience, and defendant Gill suggested that the program or production be given the name 'Blind Date'. * * *

"That the basic ideas and the form and manner of production of the said program were originated by the defendant Joe Floyd after his discussions with defendant Gill and that neither the plaintiff, Thomson, nor the intervener, Gingrich, originated any of the basic ideas or the form and manner of production of the said program and neither plaintiff or intervener is owner of any part of said program or literary production and neither has any right therein and neither is entitled to an accounting in this action. That both plaintiff and intervener were present on a number of occasions when the staging of the program was discussed and when the program was presented and broadcast and plaintiff Thomson, at the request of defendant Floyd, gave technical advice as to the use of telephones and radio equipment and the manner of broadcast in general; and that intervener Gingerich procured or assisted in procuring a sponsor for the broadcasting of said program on the Sioux Falls station and advertised its production locally, and freely and voluntarily offered advice and suggestions as to what he thought were improvements in stage arrangements and the manner of broadcasting, but did not originate any of the salient or basic ideas of the program or method of its production."

Judgment was entered against plaintiff and he has appealed. Plaintiff contends that the findings of the trial court are against the undisputed evidence and the clear preponderance of the evidence. No useful purpose would be served in detailing the evidence of the various witnesses. Sufficient to say is that we have carefully considered the entire record and are unable to conclude that the evidence clearly preponderates against the court's findings. Appellant strongly relies upon an agreement tendered appellant by the respondent wherein it was provided that for a certain consideration appellant "does hereby sell, set over, convey and assign unto the parties of the first part (Floyd and Gill) all his right, title and interest in that certain production known as 'G. I. Blind Date'." It is contended that this proposed agreement submitted to appellant

by defendant recognizes appellant's ownership of an interest and contradicts the respondent's version of the various transactions disclosed by the evidence. However, respondent testified that as he was about to conclude an advantageous sale of this production he "had a lot of problems with people claiming ownership to the show", among whom was the appellant, and that the agreement was offered to the appellant upon the expressed condition and for the purpose that "he would not interfere with anything in New York", that is, interfere with the sale. There is considerable testimony relating to this transaction and the trial court after hearing it all concluded that the tender of this agreement by respondent did not "strongly indicate that he recognized the validity of plaintiff's claim", but was an attempt by respondent to rid himself of what he considered a spurious claim. There is ample testimony to support the view of the trial judge. When considered in this light, the tender of this agreement has little, if any, probative effect, and in any event it is not sufficient to overcome the other testimony upon which the trial court apparently relied in making the findings above set out, nor is it sufficient, in our opinion, when considered with all the testimony to compel a holding by this court that the entire evidence clearly preponderates against the court's findings.

We accept the findings of the trial court. We agree with the trial court that under these facts as determined, the appellant was not a party to a common design in the production of this program. Maurel v. Smith, D. C., 220 F. 195, 199, affirmed in 2 Cir., 271 F. 211, is the case generally cited in support of the rule that a joint or common design is essential to joint ownership of a literary production. In that case the district court quoted with approval the following: "If two persons undertake jointly to write a play, agreeing on the general outline and design and sharing the labor of working it out, each would be contributing to the whole production, and they might be said to be joint authors of it; but to constitute joint authorship there must be a common design."

Under the facts as found by the trial court there was no design or aim on behalf of appellant to produce anything; he was called in simply as a consultant or adviser upon technical questions, the answers to which were necessary before Floyd and Gill could accomplish the thing which they, and not the appellant, were attempting. True, as a result of this technical advice respondent conceived the idea of having the soldiers and girls on the stage with a partition between them, but this fact does not make appellant a party to the common design. Appellant was simply called in for a purpose, he had no original part in the design of Floyd and Gill, and advising as to technical matters necessary to the accomplishment of the design does not make him a party thereto. The design, purpose and aim, under the facts as found by the court, were on behalf of Floyd and Gill, and appellant's capacity was simply that of an adviser or consultant having no part in the design to accomplish a certain result. Any alterations or additions that appellant made in his capacity as program director after the broadcasts started would not constitute him a joint author. 18 C. J. S., Copyright and Literary Property, § 11, p. 145, Levy v. Rutly, L. R. 6 C. P. 523, Maurel v. Smith, supra.

Respondent has taken the position that this radio program known as G. I. Blind Date, has never taken any concrete form but is simply an abstract idea which is not the subject of private property. We need not determine whether this position taken by respondent is correct. We have assumed for the purpose of this opinion that the program or production as to form is an intellectual conception to which a property right attaches. Based upn this assumption we have concluded that the facts as determined by the court fail to give plaintiff any right in the conception.

The judgment appealed from is affirmed.

All the Judges concur.

PUCKETT, Circuit Judge, sitting for POLLEY, J.